[Civ. No. 63242. Second Dist., Div. Four. July 28, 1982.]

CONTINENTAL CASUALTY COMPANY, Plaintiff and Appellant, v.
PACIFIC INDEMNITY COMPANY, Defendant and Respondent.

COUNSEL

Chase, Rotchford, Drukker & Bogust, David Clark and Scott D. Miller for Plaintiff and Appellant.

Hufstedler, Miller, Carlson & Beardsley, Michael Holtzman and Peter O. Israel for Defendant and Respondent.

OPINION

**KINGSLEY, Acting P. J.**—Plaintiff appeals from a judgment of the superior court granting defendant's motion for summary judgment. We reverse and remand the cause with directions.

The present case is a dispute between two insurance carriers over their respective liability for settlement of a malpractice case. The insured was covered by three policies. One policy, issued by plaintiff, provided "primary" coverage for professional liability with a limit of $100,000. The second policy, also issued by plaintiff, provided "umbrella excess" coverage for professional liability with a limit of $500,000. The pertinent provisions of the second policy read as follows:

"The company will indemnify the insured for loss in excess of the total applicable limits of liability of underlying insurance stated in the schedule.

"If, with respect to loss ... covered hereunder, the insured has other insurance ..., provided, that if the limit of liability of this policy is greater than the limit of liability provided by other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to give the insured ... a total limit of liability equal to the limit of liability afforded by this policy."

The third policy, issued by defendant, provided coverage for professional liability with a policy limit of $500,000. The pertinent provision of the third policy read as follows: "If other valid and collectible insurance or reinsurance is available to the insured covering a loss covered by this policy ..., this insurance shall be deemed excess insurance over and above the applicable limits of all such other valid and collectible insurance or reinsurance."

When the underlying action was brought against the insured, plaintiff offered to defendant the opportunity to participate in the defense. The offer was rejected. Plaintiff then negotiated a settlement in the amount of $275,000. Plaintiff, having paid that amount, then sued defendant for indemnity. The trial court granted a summary judgment to defendant, finding that plaintiff's second policy was an "escape" policy and, thus, a "primary" policy, and that defendant's policy was an "excess" policy. The result is that plaintiff is liable for the entire amount of the settlement.

I THE POLICIES

Where, as here, two insurance policies apply to the same risk, the relative application thereof is generally determined by the explicit provisions of the respective "other insurance" clauses. (See, e.g., *American Automobile Ins. Co. v. Republic Indemnity Co.* (1959) 52 Cal.2d 507, 510 [341 P.2d 675]; *Miller v. Western Pioneer Ins. Co.* (1965) 237 Cal.App.2d 138, 142 [46 Cal.Rptr. 579].) Since the case was submitted to the trial court solely on the provisions of the respective insurance policies of the parties, without extrinsic evidence as to any intent of the insured, it is our obligation, in this appeal, to construe the policy provisions ourselves. (*Underground Constr. Co. v. Pacific Indemnity Co.* (1975) 49 Cal.App.3d 62, 67 [122 Cal.Rptr. 330], and cases cited therein.) The provisions will be resolved on the particular language involved, with ambiguities being resolved against the insurer who drafted the policy. (*Crane v. State Farms Fire & Cas. Co.* (1971) 5 Cal.3d 112, 115-116 [95 Cal.Rptr. 513, 485 P.2d 1129, 48 A.L.R.3d 1089].) If semantically possible, the policy will be given such construction as will fairly achieve its object of securing indemnity for the losses to which the insurance relates. If the language in the policy raises any reasonable doubt as to the fact of coverage or extent of liability, the language will be understood in its most inclusive sense. (*State Farm Mut. Auto. Ins. Co. v. Johnston* (1973) 9 Cal.3d 270, 274 [107 Cal.Rptr. 149, 507 P.2d 1357].)

In the jargon of the insurance business, there exist three kinds of policies: In a "primary" policy, the insurer bears the entire costs of defense and of payment up to its policy limits. In an "escape" policy, the insurer is liable only if the insured has no other valid and collectible insurance. (See *Peerless Cas. Co. v. Continental Cas. Co.* (1956) 144 Cal.App.2d 617, 621 [301 P.2d 602].) In an "excess" policy, the insurer

is liable for any liability of the insured over and above the policy limits of a primary policy. (See *Signal Companies, Inc.* v. *Harbor Ins. Co.* (1980) 27 Cal.3d 359, 365 [165 Cal.Rptr. 799, 612 P.2d 889].)

In this case, the insured is covered by three policies. The first policy, issued by plaintiff, afforded primary coverage. Both plaintiff and defendant agree that this policy must be exhausted before the coverage afforded in the remaining two policies may be reached.

The second policy, also issued by plaintiff, afforded a composite of excess and escape coverage. It provides that plaintiff will "indemnify the insured for loss in excess of the total applicable limits of liability of underlying insurance stated in the schedule." Since the underlying insurance stated in the schedule was the primary policy issued by plaintiff, plaintiff was obligated to absorb the excess liability over the amount of its own primary policy. However, an "escape" clause provided that, if the insured had other insurance, the policy afforded no insurance except excess insurance over and above the other insurance, but only in an amount, if any, sufficient to give "a total limit of liability equal to the limit of liability afforded by this policy."

The third policy, issued by defendant, is a composite of primary and excess coverage. Defendant's policy affords professional liability insurance, but "if other valid and collectible insurance . . . is available to the insured covering a loss covered by this policy . . ., this insurance shall be deemed excess insurance over and above the applicable limits of all such other valid and collectible insurance." Since plaintiff's primary policy clearly constitutes "other valid and collectible insurance," defendant was also required to absorb the excess liability over the amount of plaintiff's primary policy.

We conclude that both the second and third policies provide excess coverage over the underlying primary policy. The question presented is whether we should give effect to plaintiff's escape clause. If we give effect to plaintiff's escape clause, the plaintiff would avoid excess liability altogether, since the limit in defendant's policy equals the limit in plaintiff's "excess-escape" policy and is sufficient to cover all liability in excess of plaintiff's primary policy. If we do not give effect to plaintiff's escape clause, the only remaining issue would be how to resolve the conflict between the respective excess insurance clauses.

## II THE ESCAPE CLAUSE

■ The applicable principle appears to be that "escape" clauses are not favored in the law and that, where they are in conflict with the "other insurance" clause in another policy covering the same risk—with the result that if both clauses are given validity the insured is left unprotected—the "escape" clause will be disregarded and the "other insurance" clauses in both policies will be given effect on the basis of applicable proration. (See *Peerless Cas. Co. v. Continental Cas. Co., supra,* 144 Cal.App.2d at pp. 621-623.) Accordingly, plaintiff argues that its escape clause should be given effect because, in the absence of plaintiff's policy, the insured is fully protected by defendant's policy. (*Underground Constr. Co. v. Pacific Indemnity Co., supra,* 49 Cal. App.3d at p. 68.)

In *Underground Construction,* there was no specific underlying primary insurance. Instead, the insured was covered by two policies. One, issued by Pacific Indemnity Company, was a composite of primary and excess coverage; the other, issued by United Pacific Insurance Company, was a composite of excess and escape coverage. The language of the Pacific policy provided that the insurance was primary "except when stated to apply in excess of or contingent upon the absence of other insurance." (*Id.* at p. 69.) The language of the United policy provided that excess insurance was afforded only to the extent that other valid and collectible insurance failed to afford coverage up to the limit of liability in the policy. (*Ibid.*) Since the Pacific policy did not state that it was in excess of the United policy, the court construed the ambiguity against Pacific and ruled that the excess clause in the policy did not become operative. The Pacific policy was, therefore, the primary policy. Accordingly, the policy constituted "other valid and collectible insurance" within the meaning of the escape clause in the United policy, and, since Pacific's primary policy was sufficient to fully protect the insured, United's escape clause was given effect.

The present case differs from *Underground Construction* in three respects. First, unlike the insured in *Underground Construction,* the insured in this case is covered by specific underlying primary insurance. Second, since the underlying primary policy is "other valid and collectible insurance" within the meaning of defendant's excess insurance clause, defendant's policy is an excess policy and not a primary policy.

Third, the $100,000 liability limit in the underlying primary policy is not sufficient to fully cover the $275,000 loss.

■ We conclude that plaintiff's escape clause cannot be given effect because the underlying primary policy does not fully protect the insured. Our determination of this case must be made by resolving the conflict between the respective excess insurance clauses.

■ When two or more applicable policies contain excess insurance clauses, both liability and the costs of defense should be prorated according to the amount of coverage afforded. (*Argonaut Ins. Co.* v. *Transport Indem. Co.* (1972) 6 Cal.3d 496, 507 [99 Cal.Rptr. 617, 492 P.2d 673].)[1] The reason for this rule is that conflicting excess insurance clauses are, essentially, irreconcilable. ■ This is especially true where, as here, each of the excess insurance policies is sufficient to fully absorb the excess liability over the underlying primary policy. If we construed defendant's policy as other insurance within the meaning of plaintiff's policy, plaintiff would avoid the obligation to provide excess coverage. If we construed plaintiff's policy as other insurance within the meaning of defendant's policy, defendant would avoid the obligation to provide excess coverage. Since the result is a logical circle in which neither plaintiff nor defendant is liable, we conclude that plaintiff's "umbrella excess" policy and defendant's professional liability policy are excess policies to plaintiff's primary policy, resulting in an obligation on the part of plaintiff and defendant to pay a prorata share of the settlement in excess of the liability limit of the primary policy. (*Olympic Ins. Co.* v. *Employers Surplus Lines Ins. Co.* (1981) 126 Cal.App. 3d 593, 599 [178 Cal.Rptr. 908]; *General Ins. Co.* v. *Truck Ins. Exch.* (1966) 242 Cal.App.2d 419, 425 [51 Cal.Rptr. 462]; *Athey* v. *Netherlands Ins. Co.* (1962) 200 Cal.App.2d 10, 16 [19 Cal.Rptr. 89].) Accordingly, the escape element of plaintiff's policy cannot be effective.

Defendant argues that, because plaintiff's policy contains a disfavored escape clause, the conflict between the two excess policies should be resolved by exhausting plaintiff's policy before reaching defendant's policy. (See *Employers Reinsurance Corp.* v. *Mission Equities Corp.* (1977) 74 Cal.App.3d 826, 831 [141 Cal.Rptr. 727]; see also *Fireman's Fund Indemnity Co.* v. *Prudential Assurance Co.* (1961) 192 Cal.App.

---

[1]An exception to this rule exists when an excess insurance policy contains an escape clause specifically authorized by statute, e.g., avoidance of coverage as to certain persons. (*Argonaut Ins. Co.* v. *Transport Indem. Co., supra*, at p. 508.)

2d 492, 501 [13 Cal.Rptr. 629].) However, we do not find these cases applicable to the facts of this case. In *Employers Reinsurance*, the disputed clause was a "pure" escape clause; there was no excess coverage afforded to the insured in the escape policy. Since "pure" escape policies are disfavored, the court affirmed the trial court's decision that the escape policy was a primary policy and that it had to be exhausted before reaching the excess insurance afforded by another carrier. Here, we are confronted with the issue of conflicting excess insurance coverage; the *Employers Reinsurance* case is not relevant.

In *Fireman's Fund*, the court construed a vague and ambiguous policy and ruled that the policy afforded excess coverage solely over a particular underlying primary policy and not over any other insurance. Immediately after the primary policy became exhausted, the vague policy attached and, in turn, had to be exhausted before reaching any other policy which provided, in precise terms, excess coverage over all other insurance. Here, the second and third policies clearly provide excess coverage over the first policy and clearly conflict as to that coverage. We see no justification for choosing one policy over the other as being primarily liable for the excess liability. (*General Ins. Co.* v. *Truck Ins. Exch., supra*, 242 Cal.App.2d at p. 424.)

III THE SETTLEMENT

In its pleadings in the court below, defendant contended that the settlement was unduly large. Because its decision exonerated defendant from any obligation to plaintiff, that issue was never reached by the trial court. Plaintiff here contends that, because defendant had refused absolutely to participate in the defense or settlement of the underlying claim, it is now estopped to attack the amount of the settlement reached. We disagree. Even if defendant was, as we now hold, liable under its policy, plaintiff owed to it a duty of good faith in settlement of the underlying claim. (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 917 [164 Cal.Rptr. 709, 610 P.2d 1038].) While it is true that the settlement was well within the policy limits involved, that factor is not necessarily determinative of the issue now raised. We cannot say, on the record before us, that a good faith effort might not have resulted in a settlement for less than $275,000. Defendant is entitled to a hearing and a determination by the trial court of the good faith issue. (See *Brown* v. *Guarantee Ins. Co.* (1957) 155 Cal.App.2d 679, 689 [319 P.2d 69].) We remand for a new trial limited to that issue.

Defendant also contends that there remains a second issue that will require a new trial, namely "whether the insured knew or had reason to know, before the effective date of defendant's policy, of the claimant's intention to make a claim against the insured."

We remand for a new trial limited to those issues.

The judgment is reversed insofar as it determines that defendant is not obligated to share in a settlement of the underlying claim; it is reversed for the sole purpose of hearing and determining the two issues above discussed. Neither party shall recover costs on this appeal.

Berg, J.,* and Luros, J.,* concurred.

A petition for a rehearing was denied August 16, 1982.

---

*Assigned by the Chairperson of the Judicial Council.