**Scott P. BERRES, Plaintiff,**

v.

**ARTIFEX, LIMITED and Admiral Insurance Company, Defendants.**

**No. 96–C–422.**

United States District Court, E.D. Wisconsin.

Oct. 8, 1998.

Keelyn M. Friesen, Zimmerman, Reed, Minneapolis, MN, for Plaintiff.

Artifex—Janice L. Merrill, Artifex Ltd., Maitland, FL, Admiral-Timothy Strattner, Schellinger & Doyle, S.C., Brookfield, WI, for Defendants.

## ORDER

STADTMUELLER, Chief Judge.

On April 12, 1996, plaintiff Scott P. Berres filed a complaint against defendant Artifex, Limited, the manufacturer of an allegedly defective bone screw device implanted in Berres's back, and against Admiral Insur-

ance Company, Artifex's insurer. On April 16, 1998, Admiral moved under Fed.R.Civ.P. 56 for summary judgment regarding claims-made coverage, arguing that Berres's claim is not covered under the terms of Artifex's claims-made insurance policy, and the defendants moved for partial summary judgment dismissing counts three, four, five, six, and seven of plaintiff's complaint. The court will deny Admiral's summary judgment motion regarding claims-made coverage and will grant in part and deny in part defendants' motion for partial summary judgment dismissing counts three, four, five, six, and seven of plaintiff's complaint.

## I. Motion for Summary Judgment for Claims–Made Coverage

### A. Undisputed Facts

Just as the plaintiffs in *Staudt v. Artifex, Ltd.*, 16 F.Supp.2d 1023 (E.D.Wis.1998) (Gordon, J.), failed to file a response to Admiral's proposed findings of fact as required by Local Rule 6.05(b)(1), Berres failed to respond to Admiral's proposed findings of fact in this case. Likewise, as in *Staudt*, Admiral failed to respond to the plaintiff's proposed findings of fact according to Local Rules 6.05(c) and 6.05(a)(2).[1] Accordingly, the court must conclude that there is no genuine issue as to any of Admiral's or Berres's proposed factual findings. *See Stewart v. McGinnis*, 5 F.3d 1031, 1034 (7th Cir.1993), *cert. denied*, 510 U.S. 1121, 114 S.Ct. 1075, 127 L.Ed.2d 393 (1994); Local Rule 6.05(d).

Admiral issued an insurance policy to Artifex providing coverage for completed operations and products liability for a policy term from February 21, 1994 to February 21, 1995 (Artifex subsequently allowed the policy to lapse upon its expiration). The policy was a claims-made policy which only provided coverage for claims first made during the "policy period," which extended from the "retroactive date" of February 21, 1991, to 12:01 a.m.

1. In its reply brief, Admiral purported to correct several facts set forth by the plaintiff. Because Admiral did not offer these "corrections" in accordance with Local Rule 6.05, the court is not obligated to heed them. However, in the interest of justice, the court will consider these factual objections where appropriate.

2. Those in the insurance business often refer to this type of clause as a "discovery clause." *See*

on February 21, 1995. The policy also provided coverage for claims made after the expiration of the policy under certain circumstances:

> Further, if within the policy period, *the insured complies with Amended Condition 4(a)* as respects any alleged bodily injury or property damage arising out of an occurrence subsequent to the Retroactive Date and prior to the expiration or cancellation date, coverage hereunder will apply to any claim made or suit brought as a result of that occurrence, even if such claims or suit arises after the expiration of the Claims Extension Period.
>
> . . . .

## IV. AMENDED CONDITION 4(a)

With reference to this Coverage Part, Condition 4(a) is amended to read as follows:

**Condition 4(a)—Insured's Duties in the Event of Occurrence, Claim or Suit**

> (a) Upon the Insured becoming aware of any alleged bodily injury or property damage to which this insurance applies, written notice containing particulars sufficient to identify the Insured and also *reasonably obtainable information* with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized representatives *as soon as practicable.*

Anderson Aff. at Ex. H (emphasis added).[2]

It is undisputed that prior to April 15, 1996, Artifex and Admiral had no notice of Berres's claims in particular or of the specific bodily injury or property damage suffered by Berres. However, it is also undisputed that Artifex and Admiral had notice of a class action lawsuit involving bone screw liability (the *Woodzicka* class action) during the policy period[3] and that Scott Berres was a mem-

*KPFF, Inc. v. California Union Ins. Co.*, 66 Cal. Rptr.2d 36, 56 Cal.App.4th 963, 972 n. 1 (Ct.App. 1997).

3. Berres alleged this fact, and Admiral's only objection to it (through the improper avenue of its reply brief) was that Artifex was served with the *Woodzicka* summons and complaint on January 25, 1995, not December 19, 1994, as plaintiff

ber of that class, albeit an unnamed one. Judge Louis Bechtle of the United States District Court for the Eastern District of Pennsylvania denied class certification of the *Woodzicka* class in July 1995.[4]

## B. Analysis

Admiral argues that it is entitled to summary judgment because Berres did not make his claims within the policy period and Admiral did not receive notice of Berres's claims during the policy period pursuant to the above-quoted policy language (the "discovery clause").

### 1. Interpretation of "Discovery Clause"

As an initial matter, this court believes that both the parties and Judge Gordon in *Staudt* (interpreting the same policy in issue here) may not have considered another reasonable interpretation of the policy language in question. The first paragraph of the policy quoted above refers to "any alleged bodily injury or property damage arising out of an occurrence subsequent to the Retroactive Date and prior to the expiration or cancellation date." Admiral apparently does not contest (nor could it, by the facts presented to the court) the fact that the "occurrence," whether one defines it as the time of implantation of the device, the time it allegedly malfunctioned, or the time Berres discovered its alleged defect, took place during the policy period. Therefore, under the plain language of the first paragraph of the policy quoted above, the question becomes: Did the insured, Artifex, comply with Amended Condition 4(a) within the policy period?

■ This raises the further question of what it means to "comply" with Amended Condition 4(a). The court believes that it can reasonably be said that to "comply" with a condition means to "not violate" the condition. It appears clear to this court that Artifex did not violate Amended Condition 4(a) within the policy period; for example, it

did not become aware of a covered injury and then fail to turn the information over to its insurer as soon as practicable. Thus, even if nothing happened during the policy period, that is, if Artifex did not become aware of any injury and did not report any injury within the policy period, Artifex still "complied" with Amended Condition 4(a).

The specific language of this particular policy distinguishes this case from all of the cases that Judge Gordon relied upon. For example, in *KPFF*, the insurance policy at issue clearly required an insured to give written notice *during* the policy period: "If during the Policy Period, the Insured shall first become aware of any circumstances which may subsequently give rise to a Claim ... and if the Insured *shall during the Policy Period give written notice.* ... " 56 Cal. App.4th at 968, 66 Cal.Rptr.2d 36 (emphasis added). *See also Continental Ins. Co. v. Metro–Goldwyn–Mayer, Inc.*, 107 F.3d 1344, 1346–47 (9th Cir.1997) (policy provided that "[i]f *during the policy period* ... the insureds shall become aware of any wrongful act ... and *shall ... give written notice* ....") (emphasis added); *Continental Ins. Co. v. Superior Court of Los Angeles County*, 43 Cal.Rptr.2d 374, 37 Cal.App.4th 69, 75 (Ct.App.1995) (policy provided that "[i]f during the policy period ... insured shall become aware of any occurrence ... [a]nd shall ... *during such period give written notice* ....") (emphasis added).[5] The policy in this case does not provide that the insured must give notice within the policy period but only mandates that an insured comply during the policy period with a provision providing that *if* an insured receives facts about covered injuries, it must turn the facts over to the insurer.

■ The court acknowledges that one could reasonably read the phrase "within the policy period" as modifying "[giving] written notice" rather than as modifying "com-

---

alleged. However, since the policy did not expire until February 21, 1995, this point is irrelevant. Admiral apparently does not dispute that it received written notice of the *Woodzicka* action during the policy period.

4. Berres's action, although filed in the Eastern District of Wisconsin, was transferred to Judge

Bechtle's court for multidistrict litigation (MDL) consolidation on June 21, 1996. Judge Bechtle returned Berres's case to this court on February 23, 1998.

5. As in *Staudt*, the parties in this case agree that California law governs this insurance coverage dispute.

pli[ance] with Amended Condition 4(a)," though to do so would run afoul of the rules of grammar. However, at best, these two possible interpretations render the policy language ambiguous, which in many jurisdictions would require the court to construe the language in favor of the insured. *See generally* Barry Ostrager and Thomas Newman, *Handbook on Insurance Coverage Disputes* § 1.03 (9th ed.1994). However, California follows the "reasonable expectations" approach, under which the court first must decide whether an objective insured would reasonably expect coverage. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1264–65, 10 Cal.Rptr.2d 538, 545, 833 P.2d 545 (1992). In so doing, the court must "interpret the language in context, with regard to its intended function in the policy," 10 Cal. Rptr.2d at 545, 833 P.2d 545, but it must also "interpret [the policy language] ... broadly." *KPFF,* 56 Cal.App.4th at 973, 66 Cal.Rptr.2d 36 (quoting *Montrose Chem. Corp. v. Admiral Ins. Co.,* 10 Cal.4th 645, 667, 42 Cal. Rptr.2d 324, 913 P.2d 878 (1995)). If this exercise does not resolve the ambiguity, the court construes the policy language against the insurer. *Id.*[6]

If one broadly considers whether an insured in Artifex's position could reasonably expect coverage under this policy, it appears clear that the insured could expect coverage, especially since this court's interpretation of the policy is at least a reasonable interpretation and may even be the most reasonable interpretation of the policy language. Interpreting the policy language "in context, with regard to its intended function in the policy" presents a closer question. Regarding the textual context, the expansive language of Amended Condition 4(a), especially the phrase "reasonably available information ... as soon as practicable," seems to contemplate the giving of written notice outside of the policy period—if an insured must give notice during a precisely defined policy period,

there would seem to be no reason to add that amorphous phrase. On the other hand, the court cannot ignore the "social utility" of claims-made policies versus occurrence policies, *see KPFF,* 56 Cal.App.4th at 972, 66 Cal.Rptr.2d 36, and the court's reading of the policy may essentially turn this claims-made policy into an "occurrence" policy or something close to it. However, it is widely acknowledged and accepted that such "discovery clauses" expand coverage beyond that of a simple claims-made policy, *see Gyler v. Mission Ins. Co.,* 10 Cal.3d 216, 110 Cal. Rptr. 139, 514 P.2d 1219 (1973), and who is to say where this expansion either turns the policy into or falls short of turning the policy into an "occurrence" policy, especially when the language of the policy does not explicitly mandate giving notice during the policy period, as most policies do?[7]

The court finds that going through the "reasonable expectations" exercise does not resolve the ambiguity created by the policy language. As a result, the court is left to construe this policy language against the insurer. *See Bank of the West,* 10 Cal.Rptr.2d at 545, 833 P.2d 545. Therefore, Admiral may not deny coverage of Berres's claim on the grounds that Artifex did not comply with Amended Condition 4(a), and the court must deny Admiral's motion for summary judgment regarding claims-made coverage.

### 2. The *Woodzicka* Class Action

Even if the court did not find that its interpretation of this policy language would cause an objective insured to reasonably expect coverage in this situation, the court believes that Admiral's receipt of notice of the *Woodzicka* class action during the policy period satisfied the "discovery clause" regarding Berres's claim. Therefore, the court would deny Admiral's summary judgment motion regarding claims-made coverage in any event.

---

**6.** The court recognizes that whether or not such "contra proferentem" rules should apply when the insured is a business may be an issue. *See, e.g., Shell Oil Co. v. Winterthur Swiss Ins. Co.,* 12 Cal.App.4th 715, 737–38, 15 Cal.Rptr.2d 815, 829 (Ct.App.1993) (holding that rules that normally apply to contracts of adhesion do not apply where insured is a "large sophisticated corporation of substantial worth guided in its insurance

negotiations by an able staff ... "). However, the court has no facts or argument before it on this issue and thus will not grant summary judgment for Admiral under the assumption that Artifex is too sophisticated to benefit from application of the "reasonable expectations" doctrine.

**7.** *See* the discussion of the policy language in cases cited by Judge Gordon in *Staudt, supra.*

■ Berres argues that Admiral received notice of his claim during the policy period because (1) the filing of the *Woodzicka* complaint constituted a claim pursuant to "class action policy"; and (2) the *Woodzicka* complaint provided Admiral with written notice in compliance with the aforementioned discovery clause.

In *Staudt*, Judge Gordon rejected both of these arguments and granted Admiral's motion for summary judgment regarding claims-made coverage. 16 F.Supp.2d at 1035–37. Judge Gordon first rejected the "class action policy" argument and held that the filing of a broad class action complaint did not constitute a "claim" by an unnamed class member under the terms of the policy:

> In my opinion, "class action policy" created by courts regarding statute of limitations and discovery is not germane to the issue of whether coverage exists under a privately bargained for claims-made insurance policy. In the absence of any relevant authority, I am unable to conclude that California courts would find that the filing of a class action complaint, without more, constitutes a claim made under claims-made insurance policies with respect to the injuries of any prospective, unnamed class member.

*Id.* at 1035. This court agrees. Without any California authority to support Berres's "class action policy" argument, the court will not expand the definition of "claim" as Berres desires.

■ Judge Gordon also rejected Berres's second argument regarding the "discovery clause." Judge Gordon first noted that under California law, "in order to trigger coverage under a notice clause like the one involved in the instant action, the pleadings must contain allegations which give the insurer a 'reasonable basis to infer the likelihood' of other claims to which the insurance applies." *Id.* (quoting *KPFF*, 56 Cal.App.4th at 975, 66 Cal.Rptr.2d 36). The *KPFF* court held that a mere "speculative possibility" of other claims was not sufficient. 56 Cal. App.4th at 975, 66 Cal.Rptr.2d 36. Judge Gordon held that the *Woodzicka* class action did not give Admiral a reasonable basis to infer the likelihood of claims by unnamed plaintiffs: "In my opinion, the *Woodzicka* class action complaint cannot be said to have given Admiral a 'reasonable basis to infer the likelihood' of bodily injury claims other than those of the named plaintiffs." 16 F.Supp.2d at 1036.

This court respectfully disagrees. I cannot conclude that Admiral believed or that anyone reasonably could believe upon receiving notice of a class action that *only* the named plaintiffs would have claims, simply because most class actions include a large number of unnamed plaintiffs. Judge Gordon contemplated this potentially large number of claims when he correctly described the *Woodzicka* class action as "involv[ing] *unlimited* occurrences of wrongful acts." *Id.* at 1036 (emphasis added).

Judge Gordon then held that the fact that the *Woodzicka* class may have included those who received non-Artifex bone screws gave Admiral insufficient notice regarding future claims of those in the proposed class:

> Paragraph 4 of the complaint in the Woodzicka case defined the proposed class as follows:
>
> > The proposed class representatives and named plaintiffs seek to represent the following class:
> > All citizens and residents of the states and territories of the United States of America, who have had an internal spinal fixation device utilizing pedicle screws implanted posteriorly in their backs; and all those persons (including estates, representatives, spouses, children, relatives and/or "significant others") who have a claim because of their personal relationship(s) with an individual who has had a spinal fixation device utilizing pedicle screws implanted in his or her back.
>
> (Goldser Aff. Ex. C p. 3.) *The proposed class was not even limited to recipients of Artifex hardware.* These allegations arguably "present[ed] a speculative possibility of [other bodily injury] claims" but that is not sufficient to find constructive notice to the insurer.

*Id.* at 1036 (emphasis added). This court believes that the plaintiffs' failure to limit the class to those who received Artifex implants did not impede the notice given to Artifex or Admiral. Although this failure could have

made it more difficult for Artifex or Admiral to judge the actual size of the proposed class, Admiral knew that it was only responsible for Artifex's liabilities, so the fact that the class may have included non-Artifex liabilities should not have concerned Admiral in any way. Furthermore, Artifex was the only defendant named in the *Woodzicka* complaint. *See* Anderson Aff. Ex. D.

Judge Gordon then added that he did not believe that the *Woodzicka* notice satisfied the literal terms of Amended Condition 4(a):

> In addition, I do not believe that the *Woodzicka* class action pleading served the function of written notice that is called for under Admiral's notice clause. Such clause requires that the notice given by the insured must provide Admiral with detailed information from which Admiral can ascertain the identity of the party or parties with potential bodily injury claims and the circumstances surrounding the event which caused the bodily injuries. Nothing in the *Woodzicka* class action pleading transmitted to Admiral identifies information regarding the circumstances surrounding the bodily injury claims of the Staudts or any other unnamed prospective class member.

*Id.* at 1036. This court believes that this paraphrase of Amended Condition 4(a) should also include what this court believes are important terms—that Artifex turn over *"reasonably obtainable information . . . as soon as practicable."* Anderson Aff. at Ex. H (emphasis added). It is also worth noting that Admiral did not add the phrase "reasonably obtainable information" as an afterthought but instead carefully limited the phrase to apply only to "the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses" and not to "particulars sufficient to identify the Insured." There is no question that the notice Admiral received was sufficient to identify the insured, Artifex, and that Admiral received "reasonably obtainable information" about the particulars of Berres's individual claim "as soon as practicable," that is, when Berres filed his individual suit after denial of class certification in *Woodzicka.*

Finally, Judge Gordon distinguished several California cases that support plaintiff's coverage argument, *Continental Ins. Co. v. Metro–Goldwyn–Mayer, Inc.,* 107 F.3d 1344 (9th Cir.1997), and *Continental Ins. Co. v. Superior Court of Los Angeles County,* 43 Cal.Rptr.2d 374, 37 Cal.App.4th 69 (Ct.App. 1995). In the *MGM* case, the Ninth Circuit (interpreting California law) accepted the same argument that Berres makes here, holding that sending the insurer a copy of a class-action-suit complaint and a list of other potential claims "indicati[ng] that other producers might bring claims" arising out of the same events "provided [the insurer] with all the information required by the notice provisions of the insurance contract." 107 F.3d at 1348.

Judge Gordon distinguished *MGM* on the basis of the particular policy language at issue in that case, holding that

> *Continental v. MGM* does not stand for the proposition that receipt of a class action complaint always provides constructive notice to an insurer of the potential claims of all unnamed class members to which the insurance policy applies, if any. To the contrary, the appellate court in *Continental v. MGM* specifically limited its analysis to determining whether the information provided to Continental by MGM satisfied the purpose and requirements of *the particular insurance policy at issue in that case.*

16 F.Supp.2d at 1036 (emphasis added). Although the notice provision in *MGM* is indeed different from the notice provision in this case, Judge Gordon's distinction falls short because the provision in *MGM* is actually far *stricter* than the notice provision at issue in this case. The *MGM* notice clause required that "the notice *must* state: (1) the *date or dates* when the wrongful act occurred and (2) the *specific* nature of the wrongful act." 107 F.3d at 1348 (emphasis added). In contrast, the notice clause in this case broadly asked for "reasonably obtainable information" to be provided "as soon as practicable." Thus, if anything, the facts of this case fall well within the boundaries of what notice such clauses require under California law.

Judge Gordon also distinguished *MGM* because all of the potential claims in that case arose out of only one wrongful act, a corpo-

rate merger, whereas "[i]n the instant case, the class action pleading involves unlimited occurrences of wrongful acts insofar as each implantation of a pedicle device constituted a separate wrongful act." 1998 WL 477111 at *15. However, Judge Gordon's assumption that each implantation of a bone screw device was a wrongful act may be incorrect—perhaps Artifex's alleged failure to test the devices or to seek FDA approval before marketing them was the singular wrongful act out of which claims by all plaintiffs arise. Furthermore, in *Harbor Ins. Co. v. Arthur Andersen & Co.*, 149 Ill.App.3d 235, 102 Ill. Dec. 814, 500 N.E.2d 707 (Ill.Ct.App.1986), *appeal denied*, 113 Ill.2d 574, 106 Ill.Dec. 47, 505 N.E.2d 353 (Ill.1987), a case with which the *KPFF* court did "not disagree," 56 Cal. App.4th at 976, 66 Cal.Rptr.2d 36, the court held that notice provided by a prior complaint was sufficient even though a different plaintiff filed it and even though the suits were based on a *number* of wrongful acts by the insured, not all of which were the same in both suits. 102 Ill.Dec. 814, 500 N.E.2d at 710–11. In any event, Judge Gordon's fine distinctions do not warrant rejecting *MGM*'s central principle that notice of a class action and of other plaintiffs' potential claims satisfies a discovery clause regarding an unnamed plaintiff's later claim.

Judge Gordon also distinguished *Continental Ins. Co. v. Superior Court of Los Angeles County* on similar grounds, holding that

> [t]he notice clause at issue in *Continental v. The Superior Court* merely required that notice be given to the insured of "occurrences" which may lead to a future claim. Such a provision requires far less information than the specifics required in the notice clause of Admiral's insurance policy.

1998 WL 477111 at *15. This court believes however, that when consideration is given the "reasonably available information ... as soon as practicable" language of the policy

the notice clause in *Continental* is actually more restrictive than the clause in the present case.[8]

To conclude, the court believes that Artifex "complied" with Amended Condition 4(a) within the policy period, and that in any event, the *Woodzicka* class action satisfied the "discovery clause" here according to the *Continental Insurance* precedents. Therefore, the court will deny Admiral's motion for summary judgment regarding claims-made coverage.

## II. Motion for Partial Summary Judgment Dismissing Counts Three, Four, Five, Six, and Seven of Plaintiff's Complaint

### A. Count Three

Berres alleges in count three of his complaint that Artifex breached express and implied warranties. The parties agree that Judge Bechtle dismissed all express warranty claims in PTO 651, and plaintiff apparently does not contest the dismissal of his implied warranty claim, either, as he does not mention it in his response to defendants' summary judgment motion. In *Staudt*, Judge Gordon held that the plaintiff's implied warranty claims failed because of the lack of privity of contract. *See* 1998 WL 477111 at *6 (citing *City of La Crosse v. Schubert, Schroeder & Assoc., Inc.*, 72 Wis.2d 38, 41, 240 N.W.2d 124 (1976), *rev'd on other grounds, Daanen & Janssen, Inc. v. Cedarapids, Inc.*, 216 Wis.2d 394, 573 N.W.2d 842 (1998)). The same appears to be true in this case. Therefore, the court will grant partial summary judgment for defendants on count three of the complaint.

### B. Count Four

Berres claims in count four of his complaint that Artifex fraudulently misrepresented the safety and efficacy of the bone

---

8. Even without this forgiving language, the court in *Continental v. Superior Court* gave this benefit to the insured in that case:

> As the trial court pointed out, plaintiffs had provided all of the information they had; that is, they provided the best notice they could.... Continental cannot avoid coverage by claiming that plaintiffs' description of possible future events was not more specific. Plaintiffs pro-

vided all of the information they had as well as all they were likely to have until a specific complaint was actually filed by the complaining third parties. The policy could not reasonably require more.

37 Cal.App. 4th at 80–81, 43 Cal.Rptr.2d 374. Surely the court should not take away this benefit when the policy specifically provides it.

screw devices and fraudulently concealed the devices' defects. Defendants move for summary judgment on this claim, arguing that (1) Berres never saw any advertising of Artifex's devices nor did he discuss the safety or efficacy of the devices with his operating surgeon; and (2) Berres's allegation that Artifex "intentionally failed to warn the FDA" is precluded by Judge Bechtle's PTO 845 dismissing all "fraud on the FDA" claims.

Judge Gordon dismissed this claim in *Staudt* because the plaintiff failed to show that there was a genuine issue of material fact regarding reliance, an essential element of both fraudulent misrepresentation and fraudulent concealment. *See* 16 F.Supp.2d at 1030 (citing *Goerke v. Vojvodich,* 67 Wis.2d 102, 226 N.W.2d 211 (1975)). Judge Gordon found that the plaintiff had presented no evidence whatsoever of reliance:

> It is undisputed that Mr. Staudt was not informed by his surgeon or by any other means, *prior to surgery,* that Artifex hardware was going to be implanted in his back during the spinal fusion surgery in November 1991. It is also undisputed that the plaintiff saw no advertising or any other representations regarding the Artifex device prior to surgery. Indeed, Mr. Staudt points to nothing in the record to ·show that he in fact relied on any misrepresentation by Artifex or upon Artifex's silence regarding the testing of its device.... Therefore, because the plaintiffs have failed to point to any evidence to establish that Mr. Staudt relied on the defendants' alleged fraudulent misrepresentations or omissions—an essential element of their claims for fraud under Wisconsin law— their fraud claims in count 4 will be dismissed, with prejudice.

*Id.* at 1030. This court agrees. Without any evidence of reliance, Berres may not proceed with his fraud claims. Therefore, the court will grant partial summary judgment for the defendants on count four of the complaint.

### C. Count Five

Berres claims in count.five of his complaint that Artifex deceptively marketed its bone screw devices in violation of Wis. Stat. § 100.18. Defendants argue, and Judge Gordon held in *Staudt,* that this claim is barred by the applicable statute of limitations.

Plaintiff apparently concedes this point, as he fails to mention the statute of limitations anywhere in his response to defendants' motion for summary judgment. Because the court agrees with Judge Gordon's analysis on this point, *see id.* at 1030–31, the court will grant partial summary judgment for the defendants on count five of the complaint.

### D. Count Six

Berres claims in count six of his complaint that Artifex intentionally concealed material facts in order to sell its bone screw devices. Judge Gordon dismissed this claim for the same reason as he dismissed the fraud claims, lack of evidence of reliance by the plaintiff:

> Here, the plaintiffs have not produced a shred of evidence to support the contention that Artifex made any representations to Mr. Staudt regarding the safety of its devices or that Mr. Staudt relied on such representations or omissions regarding the safety of the devices. As a result, the defendants are entitled to summary judgment dismissing this claim, with prejudice.

*Id.* at 1032. This court agrees. Because Berres has not produced any evidence of reliance, the court will grant partial summary judgment for the defendants on count six of the complaint.

### E. Count Seven

Berres claims in count seven of his complaint that Artifex negligently inflicted emotional distress on Berres. Judge Gordon declined to dismiss the same count in *Staudt* because it appeared to be a component of plaintiffs' general negligence claim:

> While the plaintiffs' claim for negligent infliction of emotional distress appears to be nothing more than a component of their general claim for negligence, I do not believe that the defendants are entitled to dismissal of count 7 on that basis alone. If I were to enter a formal dismissal of this "claim," it would suggest that the plaintiffs are not entitled to seek damages for emotional distress caused by the defendants' alleged negligence. I am not prepared to do that upon the present record. Therefore, I will deny the portion of the defen-

dants' motion seeking summary judgment as to count 7.

*Id.* at 1032. Again, this court agrees. Because defendants do not move for summary judgment on Berres's general negligence claim, the court does not wish to impede that claim by ruling that plaintiff cannot recover emotional distress damages for Artifex's alleged negligence. Therefore, the court will deny defendants' motion for partial summary judgment regarding count seven of the complaint.

## III. CONCLUSION

For the reasons stated above, the court will deny Admiral's motion for summary judgment regarding claims-made coverage and will deny in part and grant in part defendants' motion for partial summary judgment dismissing counts three, four, five, six, and seven of plaintiff's complaint.

Accordingly,

**IT IS ORDERED** that Admiral's motion for summary judgment regarding claims-made coverage be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment dismissing counts three, four, five, six, and seven of plaintiff's complaint be and the same is hereby **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment be and the same is hereby **GRANTED** regarding counts three, four, five, and six of the complaint;

**IT IS FURTHER ORDERED** that counts three, four, five, and six of the complaint be and the same are hereby **DISMISSED** with prejudice; and

**IT IS FURTHER ORDERED** that defendants' motion for partial summary judgment be and the same is hereby **DENIED** regarding count seven of the complaint.